26CA0668 Peo in Interest of Osse 06-25-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 26CA0668
Pueblo County District Court No. 26MH30038
Honorable Gregory J. Styduhar, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Michael Donald Osse,

Respondent-Appellant.

ORDER AFFIRMED

Division V
Opinion by JUDGE BERNARD*
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 25, 2026

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County
Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    Respondent, Michael Donald Osse, is charged with second degree murder in Jefferson County Case No. 22CR0310. In 2022, a court found he was incompetent to stand trial, and it committed him to the care and custody of the Colorado Mental Health Hospital in Pueblo. In a March 30, 2026, order, the district court authorized the hospital to treat respondent, against his will, with antipsychotic medication to restore his competency. He appeals. We affirm.

## I.    Background

¶ 2    According to the affidavit of respondent's treating psychiatrist, respondent's competency has been evaluated twelve times between 2022 and 2025 by the hospital staff. Each of these evaluations found he was incompetent to proceed.

¶ 3    The hospital's staff recommended medications to treat respondent's diagnosed psychiatric condition: unspecified schizophrenia spectrum and other psychotic disorder. He has only intermittently taken the medications; he mostly refuses to take them.

¶ 4    Prompted by respondent's most recent refusal to take his prescribed medications and the long duration of his incompetency, the People asked the district court to authorize the hospital's staff

to administer medication — including daily dosages of Zyprexa (olanzapine) up to 40 mg orally or intramuscularly — involuntarily, along with all necessary laboratory work and testing to monitor medication levels in his system and side effects.

¶ 5 Following a hearing on March 30, 2026, the court found the People had satisfied the four factors set out in *Sell v. United States*, 539 U.S. 166 (2003), to justify the involuntary administration of medication to restore a person's competency. The court therefore granted the petition. By its express terms, and "unless otherwise ordered by the court," the court's order "continue[s] through the completion" of respondent's criminal trial.

## II. Discussion

¶ 6 Respondent does not contest the first *Sell* factor, thus conceding the government has a substantial interest in restoring his competency so he can receive a fair and timely trial. Rather, he contends the People's evidence was insufficient to support the court's findings concerning the second, third, and fourth *Sell* factors. We disagree.

## A. Governing Law and Standards of Review

¶ 7 When, as in this case, the government seeks to involuntarily medicate a defendant for the sole purpose of rendering him or her competent to stand trial, the People must satisfy the four-part test articulated by *Sell*. *People in Interest of R.F.*, 2019 COA 110, ¶¶ 10-11. First, they must demonstrate that important governmental interests are at stake. *Sell*, 539 U.S. at 180. Bringing to trial an individual accused of a serious crime is an important governmental interest. *Id.*; *R.F.*, ¶ 12. Second, involuntary medication must significantly further those interests. *Sell*, 539 U.S. at 181. Third, the medication must be necessary to further those interests. *Id.* Fourth, the medication must be "medically appropriate," that is, "in the patient's best medical interest in light of his medical condition." *Id.* The People must prove each factor by clear and convincing evidence. *R.F.*, ¶ 16. But a physician's testimony alone may meet this evidentiary standard. *See People v. Pflugbeil*, 834 P.2d 843, 846-47 (Colo. App. 1992).

¶ 8 When evaluating whether the evidence was sufficient to support an involuntary medication order, we view the evidence as a whole and in the light most favorable to the prevailing party. *See*

3

*People in Interest of R.K.L.*, 2016 COA 84, ¶ 13. We review the court's legal conclusions de novo and review its factual findings for clear error. *See R.F.*, ¶ 21.

### B. The Second *Sell* Factor

¶ 9　　The People satisfy the second *Sell* factor by showing that (1) administering the medication is substantially likely to restore the defendant's competency, and (2) the medication is substantially unlikely to have side effects that will interfere with the defendant's ability to assist in his or her defense. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13.

¶ 10　　Respondent asserts the People did not meet their burden to prove either of these components of the second *Sell* factor.

¶ 11　　Addressing the first component of the second *Sell* factor, respondent submits the psychiatrist's testimony relied on two short periods when respondent voluntarily took Zyprexa, but the psychiatrist also acknowledged that respondent "had only taken low doses for short periods and had never received an adequate treatment dosage for an extended time." As a result, respondent continues, the psychiatrist's testimony did not "show a substantially likely restoration outcome"; rather, he submits, it

4

shows the People were "asking the court to force a medication trial based on an unproven assumption." So, respondent goes on, the People's position "was necessarily predictive and speculative rather than supported by demonstrated individualized treatment success." Respondent finishes up by contending that "the lengthy history of unsuccessful restoration efforts required far more rigorous individualized proof than was presented here."

¶ 12 We disagree with this assertion because the record contains the following information concerning the first component of the second *Sell* factor:

- The symptoms of respondent's psychiatric condition included disorganized thinking, delusional ideation, and paranoia.

- The psychiatrist thought respondent had no insight into his mental illness.

- The psychiatrist's opinion was that, if respondent were treated with Zyprexa, it was substantially likely he would be rendered competent to stand trial.

- Respondent had voluntarily taken Zyprexa twice.

- When respondent stopped taking Zyprexa the first time, the psychiatrist thought there was a slight deterioration in his condition coinciding with two "incidents of agitation" involving angry confrontations with other patients; such incidents did not occur while respondent was taking Zyprexa.

- When he took Zyprexa the second time, respondent told the psychiatrist he thought the drug was helping with his disorganized thinking; after he stopped taking the drug, he denied his thinking had been disorganized.

- The psychiatrist and the authors of the twelve competency evaluations thought respondent would not be restored to competency without receiving psychiatric medication.

¶ 13 Concerning the second component of the second *Sell* factor, whether the medication is substantially unlikely to produce side effects interfering with a defendant's ability to assist in his or her defense, *Sell*, 539 U.S. at 181; *R.F.*, ¶ 13, respondent points to his testimony that he has experienced side effects — in particular, weight gain and a "dulling effect" — while taking a 5-10mg dose of

Zyprexa.  And he refers to his testimony that this "dulling effect" would affect his ability to work with his criminal defense attorneys:

> I do feel that it would hinder my ability to work at the level and success we've had so far.  I think it would hinder even reading or the organizational thought process that I have excelled [at] my whole life.  I also feel that the dulling effect would increase and it would almost give me a feeling of being high.

¶ 14    The district court, however, found that the administering the requested medication "is substantially unlikely to have side effects that will interfere significantly with [respondent's] ability to assist counsel in conducting a trial defense."  In doing so, the court credited the treating psychiatrist's testimony that this was the case and that respondent had "denied any significant side effects like over sedation or tiredness" while on Zyprexa, and "there was nothing observable in his presentation that indicated [that taking the medication] would conflict with his ability to interact with legal representation."

¶ 15    In addition, the court relied on the psychiatrist's testimony that (1) while compliant with the medication, respondent had reported an improvement in his thought organization; (2) the psychiatrist had noticed a slight improvement in his ability to do so;

and (3) it was only after abruptly discontinuing Zyprexa that respondent denied ever experiencing improvements.

¶ 16    Given that the court relied on the psychiatrist's testimony, which it found credible and persuasive, we conclude that sufficient evidence supports the court's challenged finding. *See Pflugbeil*, 834 P.2d at 846-47; *see also People in Interest of R.C.*, 2019 COA 99M, ¶ 7 (acknowledging we defer to the district court's resolution of evidentiary conflicts and its determinations of witness credibility, the weight of the evidence, and the inferences to be drawn from it).

¶ 17    We are not persuaded otherwise by respondent's assertion that the psychiatrist's testimony was "generalized" or "conclusory." The psychiatrist testified to both his personal observations of respondent while he was medicated and to respondent's reports that he was not experiencing the types of side effects he had reported once he stopped taking the medication. And we are not persuaded that the People had to present testimony establishing that "substantially higher doses" of Zyprexa "would not impair [respondent's] cognition or ability to communicate with counsel." The order authorizes dosing of Zyprexa *up to* 40mg; it does not require that amount from the start. And the district court was

permitted to rely on the psychiatrist's medical opinion that this administration of Zyprexa was substantially unlikely to create side effects that would significantly interfere with respondent's ability to assist counsel in conducting a trial defense.

## C. The Third *Sell* Factor

¶ 18    As noted, the third *Sell* factor requires the People to prove that involuntary medication is necessary to further the governmental interest. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14. The People satisfy this factor by showing, as is relevant to this appeal, that any alternative, less intrusive treatments are unlikely to achieve substantially the same results. *Sell*, 539 U.S. at 181; *R.F.*, ¶ 14.

¶ 19    Respondent asserts that that the evidence presented at the hearing does not support this showing because the psychiatrist admitted that respondent had not "significantly deteriorated" in the time he remained off antipsychotic medication. Respondent argues the psychiatrist's opinion that he would not continue to deteriorate without antipsychotic medication undermines the People's claim that involuntary medication is necessary.

¶ 20    But preventing deterioration is not the governmental interest at issue here. Rather, the governmental interest in treating

respondent is to bring him to trial in a criminal proceeding, for which competency is a prerequisite. And, although the psychiatrist acknowledged respondent's participation in competency restoration groups for years, he thought that respondent had received the "maximum benefit that he c[ould]" from such non-medication-based therapies. The psychiatrist also noted that the evaluators from respondent's twelve competency evaluations "have also indicated that without medications" he would not be restored to competency. This evidence clearly and convincingly supports the court's determination that involuntary medication is both necessary to further the governmental interest of restoring respondent to competency to stand trial and that any alternative, less intrusive treatments are unlikely to achieve substantially the same results.

### D. The Fourth *Sell* Factor

¶ 21 Last, respondent contends that the court erred in finding the requested medication is "medically appropriate." *Sell*, 539 U.S. at 181; *R.F.*, ¶ 15. He discounts the psychiatrist's medical opinion to this effect, and he notes his own testimony regarding adverse side effects, arguing that the People did not meaningfully explain why

the proposed medication regimen was in his best medical interest considering such side effects.

¶ 22   The court, however, credited the psychiatrist's testimony that (1) the proposed medication was medically appropriate, and (2) respondent has exhibited little or no significant side effects while taking it. We are not at liberty to disregard this credibility determination. *R.C.*, ¶ 7.

¶ 23   And we are not persuaded that the psychiatrist's testimony was insufficiently individualized. Contrary to respondent's suggestion on appeal, the psychiatrist did not only testify that the requested medication is commonly prescribed for respondent's condition; he testified about his personal, medical observations of respondent and about respondent's own reports that he experienced improvement while on the requested medication.

¶ 24   The order is affirmed.

JUDGE YUN and JUDGE SCHUTZ concur.